Angela C. Agrusa (SBN 131337)
aagrusa@linerlaw.com
Nathan M. Davis (SBN 287452)
ndavis@linerlaw.com
LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024.3518
Telephone: (310) 500-3500
Facsimile: (310) 500-3501

Attorneys for Defendant WWF Operating Company, dba WhiteWave Services, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| MELANIE KELLEY, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WWF OPERATING COMPANY, a Delaware corporation, dba WHITEWAVE SERVICES, INC.,<br><br>Defendant. | Case No. 1:17-cv-00117-LJO-BAM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: May 3, 2017<br>Time: 8:30 a.m.<br>Crtrm.: 4<br><br>The Hon. Lawrence J. O'Neill |

**PLEASE TAKE NOTICE** that, on May 3, 2017, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 on the seventh floor of the above-entitled court located at 2500 Tulare Street, Fresno, California 93721, Defendant WWF Operating Company ("WhiteWave") will and hereby does move the Court to dismiss Plaintiff's Complaint [Doc. 1].

This Motion seeks dismissal pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) and is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court,



LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

and such other matters of which this Court may take judicial notice.

Dated: March 22, 2017 LINER LLP

By: */s/ Angela C. Agrusa*
Angela C. Agrusa
Attorneys for Defendant WWF Operating Company, dba WhiteWave Services, Inc.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ALLEGATIONS AND CAUSES OF ACTION IN THE COMPLAINT ..... 3
III. ARGUMENT ..... 5
A. Legal Standards ..... 5
B. Plaintiff's Claims are Expressly Preempted ..... 5
C. Plaintiff's Claims are Barred by the FDA's Primary Jurisdiction of the FDA ..... 8
D. Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter of Law ..... 9
1. A Reasonable Consumer Would Not Be Led To Believe That the Term "Milk" in "Almondmilk" Promises a Nutritional Equivalent to Cow's Milk ..... 10
2. A Reasonable Consumer Would Not Be Misled by Accurate Factual Statements Comparing Certain Nutritional Qualities of Silk Almondmilk to Cow's Milk ..... 12
3. A Reasonable Consumer Would Not Be Misled by Website Statements Presenting Silk Almondmilk as an Alternative to Dairy Milk ..... 14
4. WhiteWave Was Under No Duty to Disclose Every Nutritional Difference Between Silk Almondmilks and Dairy Milk ..... 14
E. Plaintiff Has Failed to Plead Her Claims with the Requisite Particularity for Many of the Silk Almondmilk Products ..... 15
F. Plaintiff Lacks Standing to Bring This Suit ..... 18
1. Plaintiff Has Suffered No Cognizable Injury ..... 19
2. Plaintiff Has No Standing to Seek Injunctive Relief ..... 20
3. Plaintiff Has No Standing for Products She Did Not Purchase ..... 22
G. Plaintiff's Complaint is Procedurally Improper under the CLRA ..... 24
IV. CONCLUSION ..... 24

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ang v. WhiteWave Foods Co.*
No. 13-CV-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013)...........passim

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....................................................................................6

*Bates v. United Parcel Serv., Inc.*
511 F.3d 974 (9th Cir. 2007)......................................................................23

*Bell Atlantic Corp. v. Twombly*
500 U.S. 554 (2007) ....................................................................................6

*Burns v. Tristar Products, Inc.*
No. 14-cv-749-BAS (DHB), 2014 WL 3728115 (S.D. Cal. July 25, 2014)..........................................................................................................25

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012)..................................................22

*Chacanaca v. Quaker Oats Co.*
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ....................................................22

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ....................................................................................24

*Crosby v. Nat'l Foreign Trade Council*
530 U.S. 363 (2000) ....................................................................................7

*Cruz v. Anheuser-Busch Co., LLC*
No. 15-56021, 2017 WL 1019084 (9th Cir. Mar. 16, 2017)..........................13

*Davidson v. Kimberly–Clark Corp.*
76 F. Supp. 3d 964 (N.D. Cal. 2014) ........................................................25

*Davis v. Chase Bank U.S.A., N.A.*
650 F. Supp. 2d 1073 (C.D. Cal. 2009).....................................................29

*Delarosa v. Boiron, Inc.*
No. SACV 10-1569-JST CWX, 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012)..........................................................................................................26

*Duran v. Creek*
No. 3:15-CV-05497-LB, 2016 WL 1191685 (N.D. Cal. Mar. 28, 2016).......26

*Ebner v. Fresh, Inc.*
838 F.3d 958 (9th Cir. 2016)......................................................................11

LINER LLP | 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

*Edmunson v. Procter & Gamble Co.*
No. 10-CV-2256-IEG NLS, 2011 WL 1897625 (S.D. Cal. May 17, 2011) .......... 20

*Freeman v. Time, Inc.*
68 F.3d 285 (9th Cir. 1995) .......... 11

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*
No. CV F 11-0845 LJO BAM, 2012 WL 3260418 (E.D. Cal. Aug. 8, 2012) .......... 19

*Gitson v. Trader Joe's Co.*
No. 13-CV-01333-VC, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) 2, 9, 12, 16

*Gordon v. Church & Dwight Co.*
No. C 09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) .......... 10

*Granfield v. NVIDIA Corp.*
No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) .......... 27

*Hodgers-Durgin v. de la Vina*
199 F.3d 1037 (9th Cir. 1999) .......... 24

*Janney v. Mills*
944 F. Supp. 2d 806 (N.D. Cal. 2013) .......... 21

*Johns v. Bayer Corp.*
No. 09CV1935DMSJMA, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .......... 22

*Jones v. Nutiva, Inc.*
No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) .......... 26

*Jou v. Kimberly-Clark Corp.*
2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013) .......... 26

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) .......... 6, 20

*Kwikset Corp. v. Superior Court*
51 Cal. 4th 310 (2011) .......... 21, 22, 23

*Lavie v. Procter & Gamble Co.*
105 Cal.App.4th 496 (2003) .......... 11

*Lewis v. Casey*
518 U.S. 343; 116 S. Ct. 2174 (1996) .......... 27

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) .......... 21

*Machlan v. Procter & Gamble Co.*
77 F. Supp. 3d 954 (N.D. Cal. 2015) .......... 25

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) .......... 5

LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

*Mlejnecky v. Olympus Imaging Am. Inc.*
No. 2:10-CV-02630 JAM, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011)....28

*O'Shea v. Littleton*
414 U.S. 488 (1974)....24

*Pinon v. Tristar Prod., Inc.*
No. 116CV00331DADSAB, 2016 WL 4548766 (E.D. Cal. Sept. 1, 2016)....24, 25, 26

*Pom Wonderful LLC v. Coca Cola Co.*
No. CV 08-06237, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013)....7

*Rahman v. Mott's LLP*
No. CV 13-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014)....24, 25, 26

*Salazar v. Honest Tea, Inc.*
74 F. Supp. 3d 1304 (E.D. Cal. 2014)....21, 22, 27

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*
307 F.3d 775 (9th Cir. 2002)....10

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003)....6, 18

*Von Koenig v. Snapple Beverage Corp.*
713 F. Supp. 2d 1066 (E.D. Cal. 2010)....21

*Werbel ex rel. v. Pepsico, Inc.*
No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010)....12

*Williams v. Gerber Prod. Co.*
552 F.3d 934 (9th Cir. 2008)....11

*Wilson v. Hewlett-Packard Co.*
668 F.3d 1136 (9th Cir. 2012)....17

*Wirth v. Mars Inc.*
No. SACV151470DOCKESX, 2016 WL 471234 (C.D. Cal. Feb. 5, 2016)....18, 23

**STATUTES**

21 Code of Federal Regulations Section § 131.110....8

21 Code of Federal Regulations Section 100.1....7

21 Code of Federal Regulations Section 101.3....8, 9, 10

21 United States Code Section 337....7

21 United States Code Section 343-1....7, 10

LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

California Civil Code Section 1782 .......... 29
Federal Rule of Civil Procedure 12(b)(1) .......... 5
Federal Rule of Civil Procedure 12(b)(6) .......... 5
Federal Rule of Civil Procedure 9 .......... 6

**MISCELLANEOUS**

D. ELEANOR SCULLY & TERENCE SCULLY
EARLY FRENCH COOKERY: SOURCES, HISTORY, ORIGINAL RECIPES, AND MODERN ADAPTATIONS (Univ. of Mich. Press 2002) .......... 1

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is an attack on the entire plant-based beverage industry. In suing defendant WWF Operating Company ("WhiteWave"), plaintiff Melanie Kelley ("Plaintiff") makes no allegation that any specific labeling claim on any of the products at issue is false. There is no allegation that any ingredient in any product was misrepresented on its label. There is no allegation that any Nutrition Facts panel incorrectly communicated the amounts of nutrients contained in any product. There is no allegation that WhiteWave made any specific marketing claim that was false. Rather, Plaintiff is fundamentally challenging the common and usual names for plant-based beverages. Specifically, Plaintiff challenges whether almondmilk, which has been in existence for centuries,[1] can actually be called "almondmilk."

WhiteWave is a leading consumer packaged food and beverage company that manufactures, markets, distributes, and sells plant-based foods and beverages, as well as premium dairy products. WhiteWave's line of almondmilk, Silk Almondmilk, has been on the market since early 2010. Plaintiff's claims center on whether WhiteWave can employ the term "almondmilk" to describe this line of products without engendering consumer deception as to whether almondmilk is the same as milk that comes from a cow. Plaintiff contends that Silk Almondmilk cannot contain the word "milk" without violating the FDA standard of identity of ***dairy*** milk. But courts have already rejected this contention, and Plaintiff's farfetched claims have been summarily disposed of not once, but ***twice*** in prior decisions. This action amounts to nothing more than a waste of time and judicial resources.

---

[1] Almondmilk was a culinary staple as far back as the Middle Ages: "There is probably no single ingredient upon which late-medieval cookery depended more than almond milk." D. ELEANOR SCULLY & TERENCE SCULLY, EARLY FRENCH COOKERY: SOURCES, HISTORY, ORIGINAL RECIPES, AND MODERN ADAPTATIONS 60 (Univ. of Mich. Press 2002).

"[T]he fact that the FDA has standardized milk does not categorically preclude a company from giving any food product a name that includes the word 'milk'." *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *2 (N.D. Cal. Dec. 1, 2015). Moreover, the name "almondmilk" accurately describes the nature and content of the Silk Almondmilk products, while "clearly distinguishing them from milk that is derived from dairy cows." *Ang v. WhiteWave Foods Co.*, No. 13-CV-1953, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013). In fact, "the first words in the products' names should be obvious enough to ***even the least discerning of consumers***," and the thought that consumers might conflate plant-based beverages with dairy milk because of the word "milk" in the name "stretches the bounds of credulity." *Id*. (emphasis added). Ignoring those precedents (as well as common sense), Plaintiff claims that consumers are still helplessly confused between dairy milk and almondmilk. However, these claims must fail for a number of reasons.

***First***, Plaintiff's claims are expressly preempted by federal laws governing food labeling. Plaintiff seeks to sidestep the Federal Food, Drug & Cosmetic Act ("FDCA") and impose new labeling requirements on the entire plant-based beverage industry. She asks that this Court use California's unfair competition laws to usurp a role committed to the Federal Food & Drug Administration ("FDA"), forcing WhiteWave to label its plant-based beverages as "imitation milk," to delineate nutritional comparisons of its plant-based beverages to dairy milk, to reformulate its products, or to stop using "milk" in connection with its products. (Compl. ¶ 17.) The very crux of Plaintiff's state-law claims is that the common or usual name for almondmilk is in conflict with the FDA's standard of identity of dairy milk. (Compl. ¶¶ 16, 17.) The claims are thus premised on alleged violations of federal regulations that private citizens do not have the power to enforce, let alone expand by imposing additional labeling requirements ***not*** prescribed by the FDA.

***Second***, Plaintiff's claims fall within the primary jurisdiction of the FDA.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

Any alleged deception is derivative of Plaintiff's erroneous interpretation of FDA requirements and FDA standards of identity. Through this Complaint, Plaintiff is seeking to recast the conventional (and controlling) identification of plant-based milks. Permitting Plaintiff to maintain this action will undermine the FDA's unique authority to interpret and enforce the FDCA.

***Third***, no reasonable consumer would be led to believe that the term "milk" in "almondmilk" promises a nutritional equivalent to dairy milk. *Ang*, 2013 WL 6492353, at *4 (emphasis added). Nor would a reasonable consumer be misled or confused by factually accurate marketing statements highlighting certain ***nutritional differences*** between Silk Almondmilk and dairy milk. (See Compl. ¶¶ 3, 4, 30.)

***Fourth***, Plaintiff's claims do not meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Although Plaintiff purports to bring claims based on eight distinct varieties of Silk Almondmilk, she fails to give ***any*** specific information about the majority of those products. (Compl. ¶ 1 & n.1.)

***Fifth***, Plaintiff lacks standing to bring this suit because: (1) Plaintiff has suffered no cognizable injury—the labels and advertisements accurately represented what Plaintiff was receiving in exchange for her money; (2) being aware of the alleged deceptive advertising, Plaintiff cannot be "misled" again, nor has she alleged an intent to purchase WhiteWave's products in the future, so she cannot seek injunctive relief; and (3) Plaintiff could not have been personally injured as to the many products that she did not purchase.

For these reasons, set forth more fully below, Plaintiff's claims should be dismissed as a matter of law.

## II. ALLEGATIONS AND CAUSES OF ACTION IN THE COMPLAINT

Plaintiff filed her Complaint on January 24, 2017, purporting to bring claims on behalf of all persons in the United States who purchased any Silk Almondmilk product during four years prior to the filing of the Complaint. (Compl. ¶¶ 1, 48.) The Silk Almondmilk products at issue are sweepingly identified as: (1) Silk Vanilla

Almondmilk; (2) Silk Original Almondmilk; (3) Silk Organic Original Almondmilk; (4) Silk Dark Chocolate Almondmilk; (5) Silk Unsweetened Vanilla Almondmilk; (6) Silk Unsweetened Almondmilk; (7) Silk Light Vanilla Almondmilk; and (8) Silk Light Original Almondmilk (collectively, "Silk Almondmilks"). (Compl. ¶ 1 n.1.)

Plaintiff alleges that WhiteWave deceived its consumers into believing that by purchasing the Silk Almondmilks, they were purchasing a product that is "nutritionally equivalent, and even superior, to dairy milk." (Compl. ¶ 2.) However, according to Plaintiff, Silk Almondmilks are more lacking in certain nutrients than dairy milk—a fact which WhiteWave purportedly "fails to disclose to and actively conceals." (Compl. ¶¶ 2, 84, 85.) Plaintiff argues that "reasonable consumers remain unaware" that they are not receiving ***at least*** the nutritional twin to dairy milk, and had they known this, they would not have purchased Silk Almondmilks or would have paid less for them. (Compl. ¶¶ 9, 12, 44.)

Plaintiff brings her false advertising claims pursuant to: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"); (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); and (3) California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL").

Plaintiff's primary claim is that WhiteWave's use of the term "milk" in Silk Almondmilk is deceptive. (Compl. ¶¶ 3, 6, 7.) Plaintiff relies on the difference between Silk Almondmilk and the FDA definition of "milk," which is "the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows." (Compl. ¶ 2 & n.2.) Plaintiff also points to WhiteWave's ancillary marketing materials, which include advertisements inviting consumers to try Silk Almondmilk "***instead of*** your usual dairy milk," and to "***swap*** [Silk Almondmilk] for milk in recipes or shakes." (Compl. ¶ 3, emphasis changed from original.) Additionally, Plaintiff challenges WhiteWave's nutritional statements as deceptive, including: (1) a chart with factual comparisons of Silk Unsweetened

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

Vanilla Almondmilk to dairy milk; and (2) a website statement indicating that Silk Unsweetened Vanilla Almondmilk has "45% DV of calcium vs. 30% DV in skim dairy milk." (Compl. ¶¶ 3, 4.) Plaintiff alleges that WhiteWave's conduct is unlawful, and thus prohibited by the UCL, in part because it violates the FDCA. (Compl. ¶¶ 16, 31, 88.)

Plaintiff seeks damages, declaratory relief, disgorgement, injunctive relief, and attorneys' fees. (Compl. ¶ 93.)

## III. ARGUMENT

### A. Legal Standards

Defendants may move to dismiss a case when the court lacks subject matter jurisdiction or when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) requires dismissal for lack of subject matter jurisdiction where plaintiff lacks Article III standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Federal Rule of Civil Procedure 12(b)(6) requires that a complaint be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 500 U.S. 554, 570 (2007).

Additionally, claims that sound in fraud, including those under the UCL, CLRA, and FAL, must satisfy the heightened particularity requirement of Federal Rule of Civil Procedure 9(b) to survive dismissal. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Per Rule 9(b), allegations sounding in fraud must be "specific enough to give defendants notice of the particular misconduct," including "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotations omitted).

### B. Plaintiff's Claims are Expressly Preempted

Plaintiff does not allege that the Silk Almondmilk labels, marketing

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

statements, nutritional panels, or ingredients lists are false. Instead, Plaintiff is trying to use California state law to impose an entirely new set of labeling requirements on plant-based beverages. Cloaking her argument in terms of consumer deception, Plaintiff demands that WhiteWave: (1) label its plant-based products as "imitation milk;" (2) provide comprehensive nutritional comparisons of its plant-based products to dairy milk; (3) reformulate its products to conform more closely to dairy milk; or (4) refrain from using "milk" in connection with its products. (Compl. ¶¶ 2, 6, 7, 16, 17, 31, 32, 34, 37, 40, 93(c).) By trying to impose these labeling mandates, Plaintiff is improperly attempting to use civil litigation to circumvent the FDCA and FDA's regulation of food labels.

The Supremacy Clause grants Congress the power to preempt state law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Congress and the FDA have created a comprehensive and uniform system for food labeling through the FDCA, the Nutritional Labeling and Education Act of 1990 ("NLEA"), and the regulations promulgated thereunder, 21 C.F.R. §§ 1.1, *et. seq*. Only the federal government has authority to interpret and enforce this regulatory scheme.[2] 21 U.S.C. § 337. Private litigants are barred from using civil litigation to arrogate the power expressly and exclusively vested in the government, which is precisely what Plaintiff's lawsuit seeks to do.

Moreover, "[n]o State . . . may directly or indirectly establish under any authority . . . any requirement for the labeling of food of the type" regulated by federal law "that is not identical to the [federal] requirement." 21 U.S.C. § 343-1. Thus, where state law requires anything different from or in addition to the FDA's labeling requirements, that state law is preempted by the FDCA. *Id.*; 21 C.F.R. § 100.1(c); *Pom Wonderful LLC v. Coca Cola Co.*, No. CV 08-06237, 2013 WL 543361, at *3 (C.D. Cal. Feb. 13, 2013). As discussed below, Plaintiff's claims are

[2] There are a few exceptions to the federal government's exclusive authority to enforce FDA regulations, but none are applicable here. 21 U.S.C. § 337.

LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

preempted because they seek to impose labeling obligations different from, inconsistent with, and in addition to those the FDA prescribes.

Plaintiff relies on the inconsistency between the Silk Almondmilks and the FDA standard of identity of "milk" to support her claims of deception and her increased labeling mandates. (Compl. ¶ 2.) The FDA has identified milk as the "lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows." (Compl. ¶ 2 & n.2, citing 21 C.F.R. § 131.110.) Obviously, Silk Almondmilk does not meet the FDA standard for milk—nor is it supposed to. The plaintiffs in *Ang* and *Gitson* attempted the same futile argument. The FDA standard of identity "pertains to what milk ***is***, rather than what it is not, and makes no mention of non-dairy alternatives such as the Silk products." *Ang*, 2013 WL 6492353, at *3 (emphasis added). Because the FDA has not prescribed a standard of identity for products like Silk Almondmilk, the "common or usual" name for that food controls, and it must accurately describe the product. *Id.* at *4; 21 C.F.R. § 101.3(b)(1-3). Per *Ang*, "almondmilk" accurately describes the nature and content of the Silk Almondmilk products, while "clearly distinguishing them from milk that is derived from dairy cows." 2013 WL 6492353, at *4. Therefore, "almondmilk" is the common or usual name for the Silk Almondmilk products.

Similarly, "the fact that the FDA has standardized milk does not categorically preclude a company from giving any food product a name that includes the word 'milk'." *Gitson*, 2015 WL 9121232, at *2. The standard of identity of "milk" simply means that a company "cannot *pass off* a product as 'milk' if it does not meet the regulatory definition of milk." *Id*. (emphasis in original). Here, as in *Gitson*, WhiteWave has not attempted to pass off those products as dairy milk from a cow by calling its products "almondmilk." *Id.* To the contrary, the Silk Almondmilks were put on the market specifically to provide consumers with non-dairy, non-cow-

LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

derived alternatives to dairy milk.[3]

As *Ang* and *Gitson* make clear, the name "almondmilk" does not constitute a violation of the standard of identity of dairy milk. Instead, the FDCA actually requires that the Silk Almondmilk products be identified as "almondmilk" because that is the common or usual name, and thus the controlling name, for such products. 21 C.F.R. § 101.3(b)(1-3). Plaintiff's suggested characterization of the Silk Almondmilk products, which is the foundation for all of her claims, is thus inconsistent with the current FDCA mandates. For example, Plaintiff calls for WhiteWave to include on its labels mandated comparisons of its Silk Almondmilk products to dairy milk.[4] (Compl. ¶¶ 17(b), 93(c)(i).) She also wants WhiteWave to call the products "imitation milk," but that is not the common or usual name for almondmilk, nor are the products being sold as imitation milk. (Compl. ¶¶ 6, 7, 17(a), 36, 37, 38, 42, 93(c)(i).) There is no basis in federal law, state law, or any other labeling regime to require WhiteWave to relabel these products to compare them with other products. Plaintiff's attempt to create new food labeling standards through her state-law claims cannot stand.

### C. <u>Plaintiff's Claims are Barred by the FDA's Primary Jurisdiction of the FDA</u>

The doctrine of primary jurisdiction applies when there is "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4)

---

[3] Plaintiff failed to observe that WhiteWave makes ***both*** dairy products, such as Horizon® organic milks, ***and*** non-dairy alternatives, such as the Silk Almondmilks. Accordingly, WhiteWave has no interest in confusing consumers between the two. By way of analogy, Ford wants consumers to buy both a sporty Mustang and a utility F-150 pickup truck, whichever is right for them (or even both). So too does WhiteWave have an interest in selling both dairy milk and Almondmilk—and in selling the ***differences*** between the two to appeal to a wider consumer base.

[4] Specifically, Plaintiff would require WhiteWave to reform its labels to spell out each and every nutritional and compositional difference between the Silk Almondmilk products and dairy milk. (Compl. ¶¶ 2, 4, 17(b), 93(c)(i).)

requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Plaintiff's alleged deception boils down to her erroneous interpretation of FDA requirements and FDA standards of identity.[5] In fact, through this Complaint, Plaintiff is seeking to recast the conventional (and controlling) identification for all plant-based milks. However, the standards of identity of food products are set by the FDA, not by private citizens' strained applications of state law. 21 C.F.R. § 101.3; 21 U.S.C. § 343-1(a).

Thus, to the extent there is any remaining dispute as to the FDA's stance on plant-based milks, such issues require the expertise of the FDA itself and are improper for the Court to decide. *Gordon v. Church & Dwight Co.*, No. C 09-5585 PJH, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (dismissing false advertising claims under the primary jurisdiction doctrine because it would be "inappropriate for [the] court to assume the FDA's regulatory role"). Permitting Plaintiff to redefine the controlling identification of all plant-based milks through the instant state-law action undermines the FDA's unique authority to interpret and enforce the FDCA and related food labeling regulations.

**D. <u>Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter of Law</u>**

Claims under the UCL, FAL, and CLRA are governed by the reasonable consumer test, whereby the plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (internal quotations omitted).

> "This requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer

[5] Plaintiff also points to WhiteWave's ancillary marketing statements as deceptive, but these claims are no more than window dressing for Plaintiff's core argument: that Silk Almondmilks' marketing and labeling conflict with the standard identity of milk.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

> standard requires a ***probability*** that a ***significant portion*** of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016), citing *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 129 (2003) (emphasis added).

Where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing UCL, FAL, and CLRA claims where it was "obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries"); *see also Ang*, 2013 WL 6492353, at *4 (dismissing UCL, FAL, and CLRA claims where it was implausible that a reasonable consumer might confuse plant-based beverages, such as almondmilk, with dairy milk because of the word "milk").

**1. A Reasonable Consumer Would Not Be Led To Believe That the Term "Milk" in "Almondmilk" Promises a Nutritional Equivalent to Cow's Milk**

Plaintiff alleges that reasonable consumers were deceived and confused by WhiteWave's use of the term "milk" in Silk Almondmilk, leading them to believe that Silk Almondmilk is at least the nutritional equivalent of dairy milk. (Compl. ¶¶ 3, 6, 7.) In essence, Plaintiff is arguing that reasonable consumers are unable to distinguish between almondmilk and dairy milk, and believe that the four letter word "milk" carries a plethora of nutritional guarantees. This is unreasonable.

Analyzing whether the parallel term "soymilk" was false or misleading, the *Gitson* court was faced with the exact same nutritional equivalence argument as Plaintiff presents here. The court conclusively dismissed the argument:

> "The plaintiffs also suggest that the word "soymilk" is misleading . . . because it implies that the product ***has a similar nutritional content to cow's milk***. But ***a reasonable consumer (indeed, even an unsophisticated consumer) would not assume that two distinct products have the same nutritional content***; if the consumer cared about the nutritional content, she would consult the label."



LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

*Gitson*, 2015 WL 9121232, at *1 (emphasis added). As *Gitson* made clear, no reasonable consumer would see "Silk Almondmilk" and believe it to be a nutritional promise of the same nutrients in dairy milk.

In *Ang*, plaintiffs alleged that WhiteWave misbranded the same Silk products by using names like "soymilk," "almondmilk," and "coconutmilk," since the Silk products are plant-based, and the FDA defines "milk" as a substance coming from lactating cows. *Ang*, 2013 WL 6492353, at *1. "The crux of the claims [was] that a reasonable consumer might confuse plant-based beverages such as soymilk or almond milk for dairy milk, because of the use of the word 'milk'." *Id*. at *4. The court dismissed these claims with prejudice immediately, holding that these claims were "simply not plausible" and "stretch[ed] the bounds of credulity." *Id*. at *4.

Specifically, the court repeatedly explained that the name "almondmilk" (among other plant-based milks) "clearly convey[ed] the basic nature and content of the beverages, while clearly distinguishing them from milk that is derived from dairy cows," and that "the first words in the products' names should be obvious enough to ***even the least discerning of consumers***." *Id*. at *4 (emphasis added); *see also Cruz v. Anheuser-Busch Co., LLC*, No. 15-56021, 2017 WL 1019084, at *1 (9th Cir. Mar. 16, 2017) (holding that no reasonable consumer would be deceived into thinking that "Bud Light Lime Lime-a-Rita" is a low-calorie, low-carbohydrate beverage, or that it contains fewer calories or carbohydrates than a regular beer, where it is "clear from the label that the beverage is not a normal beer"). Emphasizing the instant argument's implausibility, the *Ang* court explained, "Under Plaintiffs' logic, a reasonable consumer might also believe that veggie bacon contains pork, that flourless chocolate cake contains flour, or that e-books are made out of paper." *Ang*, 2013 WL 6492353, at *4.

Just as in *Ang*, the instant claims "fail under the reasonable consumer test, as well as plausibility standard set forth in *Iqbal* and *Twombly*," and must be dismissed. *Id*.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

### 2. A Reasonable Consumer Would Not Be Misled by Accurate Factual Statements Comparing Certain Nutritional Qualities of Silk Almondmilk to Cow's Milk

Plaintiff further alleges that reasonable consumers would be deceived by WhiteWave's advertising, which highlights certain nutritional differences between Silk Almondmilk and dairy milk—for example, that Silk Unsweetened Vanilla Almondmilk has 45% DV of calcium versus 30% DV in skim dairy milk. (Compl. ¶¶ 3, 4.) Per Plaintiff, this selection of facts leads consumers to believe that "*but for* the nutritional advantages specified by WhiteWave, the Silk Almond Beverages are nutritionally equal to dairy milk." (Compl. ¶ 4, emphasis in original.) In other words, Plaintiff believes that the discrete and limited nutritional comparisons lead reasonable consumers to make the cognitive leap to believing that Silk Almondmilk has ***equal or superior*** nutritional qualities across the board, with respect to every single nutrient possibly present in dairy milk.

First, Plaintiff's "nutritionally superior" argument is nonsensical. Is tempeh nutritionally superior to red meat? If you have a Mammalian Meat Allergy it is; if you are a bodybuilder, perhaps not. Is salmon nutritionally superior to kale? If so, by what measure? Consumers may value certain nutritional qualities over others depending on their dietary goals or health requirements. For example, consumers who are lactose intolerant may place extra value in Silk Almondmilk products because they are non-dairy—a quality that lactase persistent consumers need not consider. WhiteWave could not have "deceived" consumers into believing that the Silk Almondmilks were "nutritionally superior" to dairy milk because there is no one way to measure nutritional superiority. Rather, WhiteWave provided consumers with accurate nutritional statements on the Silk Almondmilk labels, and then provided ***more*** information by comparing aspects of the products to help consumers make informed decisions, catered to their unique preferences and needs.

Second, WhiteWave never indicates or even implies that the advertised nutritional benefits constitute an exhaustive list of nutritional comparisons to dairy



LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

milk. Nor would a reasonable consumer believe them to be, because some obvious nutrients, such as protein and vitamin C, are not listed. (*See* Compl. ¶ 4.)

Third, no reasonable consumer would view the discrete and obviously limited nutritional comparisons and extrapolate those data to apply to ***every possible nutrient*** existing in dairy milk. For example, no reasonable consumer would infer that because Silk Unsweetened Vanilla Almondmilk has more calcium and vitamin E than dairy milk, it must also have an equal or greater amount of pantothenic acid, riboflavin, phosphorous, zinc, and folate. That would be akin to asserting that because fortified orange juice is advertised as having more calcium than a glass of dairy milk, it must be "nutritionally superior," or at least equivalent, to dairy milk in every other respect.[6] No reasonable consumer would so push the limits of common sense.

Finally, the information on the Silk Almondmilks' ingredients lists, website, advertisements, and nutritional panels is factually accurate. Plaintiff stretches her absurd theory so far as to allege that Silk Almondmilk "did not possess the characteristics and benefits as represented," and that WhiteWave "actively misrepresent[ed] the actual composition of the Silk Almond beverages in relation to dairy milk." (Compl. ¶¶ 61, 84.) However, Plaintiff points to no false statements of fact or active misrepresentations whatsoever to support these claims. Indeed, what consumers see on the label, on the websites, and in the advertisements is exactly what consumers get. Plaintiff does not and could not allege, for example, that the nutrition information is wrong, or that the ingredients are falsified, or that Silk Almondmilk does not possess the discretely enumerated nutritional differences from

---

[6] For example, Tropicana's website description for Tropicana Pure Premium® Calcium + Vitamin D (No Pulp), indicating that "one 8-oz. glass of Tropicana Pure Premium® Calcium + Vitamin D contains more calcium than a glass of milk." The product's label further states that it contains "As Much Calcium as a Glass of Milk," with a glass of milk pictured. Product and website descriptions available at http://www.tropicana.com/products/pure-premium/no-pulp-calcium-vitamin-d (last accessed February 28, 2017).

dairy milk.

Hence, Plaintiff has failed to plead that the nutritional comparisons are deceptive to the average consumer, and the claims must be dismissed.

### 3. A Reasonable Consumer Would Not Be Misled by Website Statements Presenting Silk Almondmilk as an Alternative to Dairy Milk

Plaintiff alleges that advertisements inviting consumers to try Silk Almondmilk "***instead of*** your usual dairy milk," and indicating that Almondmilk can be a "smart ***swap***" for dairy milk in recipes or shakes, deceive consumers into believing they are getting the equivalent of dairy milk. (Compl. ¶ 3, emphasis changed from original.) However, the very language of the advertisements clearly informs consumers that they are getting something ***different*** from dairy milk. "Instead of" and "swap" clearly signal that consumers will be replacing one product, dairy milk, with a ***different*** product, Silk Almondmilk. No reasonable consumer would be misled into believing that such words carry any promise or implication as to the underlying nutritional qualities of Silk Almondmilk. It is common knowledge that "people drink [almondmilk] ***in lieu of*** cow's milk;" there is no plausible way that advertisements capturing that same fact could be construed as misleading to reasonable consumers. *Gitson*, 2015 WL 9121232, at *1 (emphasis added).

### 4. WhiteWave Was Under No Duty to Disclose Every Nutritional Difference Between Silk Almondmilks and Dairy Milk

Plaintiff seems to assert that when comparing one product with another, it is deceptive not to disclose ***each and every nutritional difference and distinction*** between the two. (*See* Compl. ¶¶ 2, 4, 17(b), 93(c)(i).) This is nonsense. There is no duty to condition marketing statements in this manner. If Plaintiff wanted a scrupulous comparison of each and every nutritional value of almondmilk to dairy milk, she could have compared the labels (and their factually accurate ingredients lists and Nutrition Facts panels), or done a quick internet search, like she did to find the nutritional comparisons included in her Complaint. The information was and is

LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

easily accessible to Plaintiff and other consumers on the product ingredients lists and nutritional panels.

Plaintiff asserts that WhiteWave's failure to supplement the Silk Almondmilk products with additional nutrients commonly found in dairy milk "poses a serious health concern to consumers." (Compl. ¶10.) She cites governmental dietary guidelines to support her argument. (*Id.*) However, these guidelines do not impose a legal duty to label any products in a certain fashion; they exist to guide the public in matters relating to healthy eating. Plaintiff cites no legal authority for the proposition that manufacturers need to label products to show the complete nutritional differences between almondmilk and dairy milk, and her suggestion that the very existence of almondmilk creates a health risk is ludicrous. It is incumbent upon consumers to ensure that they receive the nutrients they need—not manufacturers.[7] Because WhiteWave was under no duty to disclose every nutritional difference between Silk Almondmilk and dairy milk, Plaintiff cannot base her claims on the lack of such information—especially since the labels already accurately disclose the ingredients and nutrition facts of each product.

### E. Plaintiff Has Failed to Plead Her Claims with the Requisite Particularity for Many of the Silk Almondmilk Products

Because Plaintiff's UCL, FAL, and CLRA claims sound in fraud, they must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Vess*, 317 F.3d 1103-04. Pursuant to Rule 9(b), Plaintiff must plead her claims with

---

[7] Moreover, WhiteWave did not have the duty to delineate each and every difference between the products because there were no safety concerns arising from the failure to distinguish every element of dairy milk, nor did WhiteWave ever affirmatively represent that Silk Almondmilk was nutritionally equivalent to dairy milk on all fronts. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (holding that California courts have generally rejected a broad obligation to disclose in product defect cases, and that such duty arises in the limited circumstances of product safety issues to consumers or affirmative misrepresentations actually made by defendant), *and Wirth v. Mars Inc.*, No. SACV151470DOCKESX, 2016 WL 471234, at *3-6 (C.D. Cal. Feb. 5, 2016) (holding that the *Wilson* standard of disclosure obligations applies in the context of UCL, FAL, and CLRA claims premised on material omissions).

particularity, including allegations identifying the "who, what, when, where, and how" of the misconduct charged. *Id.* at 1106. The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Id.* at 1106.

First, Plaintiff fails to plead ***any*** facts with respect to the majority of products she puts at issue in her Complaint. Plaintiff purports to bring claims based on eight different types of Silk Almondmilk, each with distinct ingredients and a distinct nutritional profile. These diverse products range from Silk Unsweetened Almondmilk, to Silk Light Vanilla Almondmilk, to Silk Dark Chocolate Almondmilk. (Compl. ¶ 1 & n.1.) In her Complaint, Plaintiff alleges that she "most recently" purchased only one product at issue: Silk Unsweetened Vanilla Almondmilk. (Compl. ¶ 18.) In her unsigned declaration, Plaintiff changes which product she purchased, and instead asserts that she "most recently" purchased only Silk Unsweetened Almondmilk, (not Silk Unsweetened Vanilla Almondmilk).[8] (Decl. ¶ 4.) There is no other mention of Plaintiff purchasing any other specific types of Silk Almondmilk.

Plaintiff fails to provide any labels, descriptions, advertisements, or nutritional information about any products except Silk Unsweetened Vanilla and Silk Original Almondmilk. In fact, all products besides Silk Unsweetened Vanilla and Silk Original Almondmilk are mentioned ***one time***, in a single footnote in the first paragraph of the Complaint—clearly inadequate allegations under Rule 9(b).[9]

---

[8] Plaintiff also asserts in her declaration that she purchased Silk Unsweetened Coconutmilk. (Decl. ¶ 4.) However, Silk's coconutmilk products are not at issue in this case per the Complaint, which contains no mention of coconutmilk. WhiteWave also notes that Plaintiff's declaration is neither signed nor dated. As such, Plaintiff's declaration is defective and may be considered invalid. *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. CV F 11-0845 LJO BAM, 2012 WL 3260418, at *7 (E.D. Cal. Aug. 8, 2012). For purposes of this motion, WhiteWave will proceed under the assumption that the contents of the declaration are true and correct. WhiteWave does not waive its right to object to the propriety of the declaration at a later time.

[9] Plaintiff also does not provide any specific information regarding her purchases of any Silk Almondmilk products at issue besides either Silk Unsweetened Vanilla



LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

Plaintiff also fails to plead specifically what was misleading about those once-mentioned and unpurchased products, or which specific representations she relied on for those products. She instead makes the insufficient blanket allegation that all products contain the same alleged misrepresentations. (Compl. ¶ 11.) However, Plaintiff does not allege that she relied upon the packaging, labels, or nutritional information of Silk Chocolate Almondmilk, or any other type of Silk Almondmilk, in making her purchase of Silk Unsweetened Vanilla Almondmilk. *See Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (dismissing claims under Rule 9(b) where the plaintiff did not allege that the packaging at issue was the packaging that he saw or relied upon in making his purchase).

Moreover, the unmentioned nutritional nuances in each type of Silk Almondmilk are especially relevant to Plaintiff's argument and must be pled with particularity. Plaintiff alleges that she was deceived because Silk Almondmilk is not "nutritionally equivalent" to cow's milk. But which of the eight Silk Almondmilk varieties is she referencing in her simplistic comparison? For the issue of nutritional equivalency, each of these different Silk Almondmilks has a different nutritional profile requiring a different standard of comparison. Did Plaintiff really believe that Silk Dark Chocolate Almondmilk was the "nutritional equivalent" of dairy milk? (*See* Compl. ¶ 1 n.1.) What kind of dairy milk? Whole? 2%? Skim? Plaintiff must plead sufficiently particular facts and nutritional expectations as to each product in order for the court to be able to apply the appropriate legal standard

---

Almondmilk or Silk Unsweetened Almondmilk—because Plaintiff apparently did not purchase the other products. (See Compl. ¶ 18; Decl. ¶ 4.) Additionally, as to Silk Unsweetened Almondmilk mentioned in her unsigned declaration, Plaintiff fails to set forth when the purchase was made. Accordingly, the claims for all Silk Almondmilk purchases other than Silk Unsweetened Vanilla Almondmilk must be dismissed. *See Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (dismissing claims under Rule 9(b) for failing to allege "when during the class period, where, how many, or how many times" the plaintiff purchased the products at issue).

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

to each of her claims.

Accordingly, under Rule 9(b) Plaintiff must plead facts about ***each*** Silk Almondmilk product with particularity, and cannot rely on the labels, representations, or purchase of one product to represent all eight nutritionally diverse products. Plaintiff's single mention of the majority of Silk Almondmilk products clearly fails to meet the requisite particularity, and such claims must be dismissed. *See Kearns*, 567 F.3d at 1126 (dismissing UCL and CLRA claims under Rule 9(b) where the plaintiff did not specify what the advertisements specifically stated, when he was exposed to such advertisements, which ones he found material, or which ones he relied upon in making his purchase); *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013), citing *Von Koenig v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1078 (E.D. Cal. 2010) ("A plaintiff alleging that product labels or packaging contain misrepresentations must make specific allegations regarding each product, and attaching only a selection of labels will not suffice under Rule 9(b).").

**F. <u>Plaintiff Lacks Standing to Bring This Suit</u>**

To establish standing, Article III of the U.S. Constitution requires that a plaintiff have suffered an injury in fact, which consists of (1) a concrete and particularized injury; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Additionally, "to establish standing under the UCL, FAL, and CLRA a person must have suffered injury in fact ***and ha[ve] lost money or property as a result***." *Salazar v. Honest Tea, Inc*., 74 F. Supp. 3d 1304, 1315 (E.D. Cal. 2014) (emphasis added); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322-23 (2011). In other words, under the three present causes of action, a plaintiff must have: "(1) ***expended money*** due to the defendant's acts . . .; (2) ***lost money*** or property; or (3) ***been denied money*** to which he or she has a cognizable claim." *Salazar*, 74 F. Supp. 3d at 1315, citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111,

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

1125 (N.D. Cal. 2010) (emphasis added). Plaintiff must also show "actual reliance" for standing, pursuant to the language indicating the money or property must have been lost "as a result" of defendant's conduct. *Id.*

Courts routinely hold that UCL, FAL, and CLRA plaintiffs "cannot expand the scope of [their] claims to include a product [they] did not purchase or advertisements relating to a product that [they] did not rely upon." *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012), quoting *Johns v. Bayer Corp*., No. 09CV1935DMSJMA, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010). Thus, for unfair competition and false advertising laws, the test is whether plaintiffs can "truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Kwikset*, 51 Cal. 4th at 317.

### 1. Plaintiff Has Suffered No Cognizable Injury

Plaintiff fails to plead a cognizable injury because the labels, nutritional information, and advertisements accurately depicted what Plaintiff was receiving in exchange for her money. In purchasing the product(s) that she did, Plaintiff got exactly what the product was advertised to be, consisting of the ingredients listed on the package and the nutritive content identified on the Nutrition Facts panels. Plaintiff received a product that possessed the nutritional benefits that were specifically disclosed in Silk Almondmilk's advertisements and website statements.

Plaintiff does not allege that WhiteWave falsified nutritional information, or that the representations about Silk Almondmilk were factually inaccurate, because that is not the case. In purchasing Silk Almondmilk, Plaintiff indeed got almondmilk. Ironically, if she had purchased "Silk Almondmilk" and received the nutritional equivalent to dairy milk as she alleges—to wit, dairy milk itself—that ***would*** seem far more deceptive than her absurd lawsuit's premise. None of the allegedly misleading aspects of the Silk Almondmilk products purports to present

Silk Almondmilk as anything other than what it is. *See Kwikset*, 51 Cal. 4th at 330 (consumers who rely on a label that ***misrepresents*** the nature or content of product suffer economic loss because the product they purchased is ***different*** than what it purported to be).

Additionally, as discussed above, WhiteWave was under no duty to disclose each and every nutritional distinction between the Silk Almondmilk products and dairy milk. Therefore, Plaintiff could not have relied on WhiteWave's failure to disclose that information, breaking the causal chain required to prove cognizable injury under the UCL, FAL, and CLRA. *See Wirth*, 2016 WL 471234, at *3-6 (holding that in the context of UCL, FAL, and CLRA claims, "because Defendants had no duty to disclose the [information] on their product labels, Plaintiffs could not have relied on Defendant's failure to disclose that information.").

**2. Plaintiff Has No Standing to Seek Injunctive Relief**

A plaintiff must demonstrate standing with respect to each form of relief sought, whether it be injunctive relief, damages, or civil penalties. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). In the instant action, Plaintiff seeks to enjoin WhiteWave from further allegedly deceptive "advertising, sales, and other business practices" with respect to the Silk Almondmilks. (Compl. ¶ 93(b).)

To have standing to seek injunctive relief, plaintiff must demonstrate "a real and immediate threat of repeated injury" in the future. *Pinon v. Tristar Prod., Inc.*, No. 116CV00331DADSAB, 2016 WL 4548766, at *3 (E.D. Cal. Sept. 1, 2016), citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). The alleged threat cannot be conjectural or hypothetical. *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014),[10] citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Past wrongs do not by themselves amount to real and immediate threats of injury. *Pinon*, 2016 WL 4548766, at *3. With respect to

[10] Plaintiff's counsel, Capstone Law APC, also represented the plaintiff in *Rahman*.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

classes, "unless the named plaintiffs are ***themselves*** entitled to seek injunctive relief, they may not represent a class seeking that relief." *Id.*, citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (emphasis added).

There are two standards courts use to determine standing for injunctive relief in the consumer context:

> "[W]here a plaintiff has ***no intention*** of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief [intention standard], and some have also held that a plaintiff who is ***aware*** of allegedly misleading advertising has no standing to seek prospective injunctive relief [awareness standard]."

*Davidson v. Kimberly–Clark Corp.*, 76 F. Supp. 3d 964, 970 (N.D. Cal. 2014) (emphasis added).

The district courts that follow the awareness standard hold that "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future, and, therefore, are not capable of being harmed again in the same way." *Pinon*, 2016 WL 4548766 at *4, citing *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 960 (N.D. Cal. 2015); *Burns v. Tristar Products, Inc.*, No. 14-cv-749-BAS (DHB), 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014); *i.a.* In filing the instant action, Plaintiff obviously is aware of the allegedly deceptive fact that Silk Almondmilk is nutritionally different from cow's milk. Therefore, there is no immediate threat of Plaintiff's alleged deception repeating.[11]

The district courts that follow the intention standard generally hold that a threat of repeated injury may still exist even after a plaintiff becomes aware of misrepresentations. However, many courts following the intention standard "require

---

[11] An attempt to craft an injury subsequent to Plaintiff's awareness would be conjectural or hypothetical *at best*, and thus insufficient to support standing for injunctive relief. *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *5-6 (N.D. Cal. Oct. 15, 2014) ("[A] plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future.").



LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

plaintiffs to allege an intent to purchase defendant's products in the future before finding a sufficient threat of future injury."[12] *Pinon*, 2016 WL 4548766 at *5, citing *Rahman*, 2014 WL 325241, at *10; *Delarosa v. Boiron, Inc.*, No. SACV 10-1569-JST CWX, 2012 WL 8716658, at *5 (C.D. Cal. Dec. 28, 2012); *Duran v. Creek*, No. 3:15-CV-05497-LB, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016). In the instant case, Plaintiff has not alleged an intent to purchase WhiteWave's products again in the future. Therefore, Plaintiff does not have standing to seek injunctive relief, even under the intention standard.

Significantly, under either standard, Plaintiff may ***not*** rely on the injunctive relief claims of the class she purports to represent. *Pinon*, 2016 WL 4548766, at *3. She is limited to her own allegations contained in the Complaint, and cannot point to the hypothetical future injuries or lack of awareness of her purported class. Accordingly, Plaintiff has failed to establish standing to seek injunctive relief.

**3. Plaintiff Has No Standing for Products She Did Not Purchase**

To have standing, named plaintiffs who represent a class "must allege and show that they ***personally*** have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183 (1996) (emphasis added). Additionally, to have standing under the UCL, FAL, and

---

[12] A few cases, relying on state public policy grounds, have held that a plaintiff asserting standing for injunctive relief need not even allege that he intends to repurchase the allegedly mislabeled product in the future. *Rahman*, 2014 WL 5282106 at *5, citing *Jou v. Kimberly-Clark Corp.*, 2013 U.S. Dist. LEXIS 173216 at *13 (N.D. Cal. Dec. 10, 2013). These cases claim that denying standing would "thwart or undermine California's consumer protection laws." *Delarosa*, 2012 WL 8716658, at *5. However, cases that "purport to create a public policy exception to the standing requirement [do] not square with Article III's mandate." *Id.* (specifically discussing Article III standing for injunctive relief in a consumer context versus the public policies underlying California consumer protection laws). *See also Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *10 n.3 (N.D. Cal. Sept. 22, 2016) ("While the Court recognizes that other courts in this district have allowed claims for injunctive relief to proceed . . . on public policy grounds, the Court respectfully disagrees with those decisions because state policy objectives cannot trump the requirements of Article III.").



LINER LLP 1100 Glendon Avenue | 14th Floor Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

CLRA, a plaintiff must demonstrate an economic injury—that she expended money, lost money, or was denied money to which she had a cognizable claim. *Salazar*, 74 F. Supp. 3d at 1315. Thus, a plaintiff has standing to assert injury based on false advertising "only if the plaintiff experienced injury stemming from the ***purchase*** of that product." *Granfield v. NVIDIA Corp*., No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (emphasis added).

Plaintiff purports to represent a class consisting of purchasers of ***any*** of the eight different types of Silk Almondmilk. (Compl. ¶¶ 1, 48.) Each of these products has ingredient compositions and nutritional values distinct from the others, which is why they are sold under different labels. Some have more sugar, some have more calories, and some have more magnesium or riboflavin, depending on their compositions.[13] Due to their nutritional differences, the diverse products cannot be lumped together as "Silk Almond Beverages," with one type being representative of the whole in comparing them to dairy milk. (*See* Compl. ¶ 1.) For example, it would be disingenuous for Plaintiff to group all of the products together and thus include in her sweeping claims a 1:1 comparison of ***unflavored***, ***unsweetened*** dairy milk to unpurchased Silk Dark Chocolate Almondmilk.

Therefore, for Plaintiff to assert standing for all eight types of Silk Almondmilk, she must establish the requisite personal injury by ***at least*** showing that she purchased each and every type. However, Plaintiff ***at most*** alleges that she purchased only Silk Unsweetened Vanilla and/or plain Unsweetened Almondmilk.[14]

Plaintiff attempts to cast a safety net for standing by claiming that "every Silk Almond Beverage at issue in this complaint . . . contains the same deceptive

---

[13] For nutritional panels of the various Silk Almondmilk products, see Silk's website at https://silk.com/products.

[14] The inconsistency between the purchase allegation in Plaintiff's Complaint and the purchase allegation in her unsigned declaration tends to indicate that she purchased one or the other of the named products, and not both. In such case, Plaintiff would also be barred from bringing claims regarding the unpurchased and erroneously mentioned product.

misrepresentations." (Compl. ¶ 11.) However, this Court has previously held that a plaintiff may not assert standing for unpurchased products on the premise that the purchased products and the unpurchased products have the same underlying defect or were subject to the same advertisements. *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630 JAM, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011).

Because Plaintiff has not suffered any injury in fact for the Silk Almondmilk products she did not purchase, those claims must be dismissed for lack of standing.

### G. Plaintiff's Complaint is Procedurally Improper under the CLRA

The CLRA requires that Plaintiff, in writing, notify WhiteWave of its unlawful act and demand corrections for the alleged violations "***thirty days or more*** prior to the commencement of an action for damages." Cal. Civ. Code § 1782(a) (emphasis added). The procedural requirements of CLRA damages claims are strictly adhered to; failure to comply results in a dismissal with prejudice. *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009). Plaintiff served her required CLRA notice on January 31, 2017, but served WhiteWave with the Complaint on February 16, 2017. Because Plaintiff failed to wait the requisite thirty day minimum, the CLRA damages claims must be dismissed with prejudice.

## IV. CONCLUSION

For these reasons, WhiteWave respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: March 22, 2017 LINER LLP

By: */s/ Angela C. Agrusa*
Angela C. Agrusa
Attorneys for Defendant WWF Operating Company, dba WhiteWave Services, Inc.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1100 Glendon Avenue, 14th Floor, Los Angeles, CA 90024.3518.

On March 22, 2017, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT** on the interested parties in this action as follows:

Lee A. Cirsch, Esq.
Robert K. Friedl, Esq.
Trisha K. Monesi, Esq.
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
lee.cirsch@capstonelawyers.com
robert.friedl@capstonelawyers.com
trisha.monesi@capstonelawyers.com

Attorneys for Plaintiff Melanie Kellev

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 22, 2017, at Los Angeles, California.

Lisa Law